1818.

SANGER
v.
WOOD.

---

### SANGER and others *against* WOOD.

Where the plaintiffs sued the defendant on his contract at law, and a few days before the trial of the cause, discovered facts amounting to a fraudulent concealment by the defendant; but proceeded to take a verdict, for the amount claimed, on which judgment was entered up; and, they, afterwards, filed their bill, in this court, for relief against the contract, on the ground of the fraud; *Held,* that by going to trial, and taking judgment, the plaintiffs had made their election of their remedy at law; and the remedies at law and equity being inconsistent, they were bound by that election.

Any decisive act of the party, with knowledge of his rights, and of the fact, determines his election, in the case of inconsistent remedies.

*June 29th,* and *August 24th.*

THE bill stated, that in *April,* 1812, the plaintiffs and defendant, by purchase at a sheriff's sale, were tenants in common of a *moiety* of a grist mill, saw mill, and carding machine, and about 40 acres of leasehold estate adjoining thereto, in lot 98, in *Manlius,* and the proportions of interest of each were stated in the bill, those of the plaintiffs amounting together to 2,128 dollars, and 48 cents, and that of the defendant to 1,203 dollars, and 50 cents. The defendant was owner of the other moiety, and it was agreed that he should take charge of, and demise the estate. On the 1st of *October,* 1812, the defendant demised the whole to *Wm. Warner,* for two years, at a rent of 700 dollars per annum, one year's rent being paid in advance.

*Warner* soon after absconded; and on the 30th of *November*, 1814, the defendant, with the assent of the plaintiffs, sold the premises to *Jonathan Jones, Jacob B. Merrick,* and *Charles Merrick,* for 6,500 dollars, payable by instalments in ten years, with interest, and the purchasers took possession of the premises. The bill further stated, that the defendant represented to the plaintiffs the impossibility that the purchasers would ever pay for the property, and the plaintiffs were thereby induced to sell their interest in the premises to the defendant, for 866 dollars, being less than half of the amount at which it had been valued; and the parties signed a memorandum of this sale on the 4th of *September*, 1815, in which it was agreed, that all rents due from *Warner*, or for the premises, or recoverable from *Jones & Merricks*, on rescinding the sale to them, should be divided between the parties, in the same manner as if the sale had not been made; and "if the sale to *Jones & Merricks* could be enforced, it is to be."

That the plaintiffs have lately discovered, that before, or about the time the first instalment on the sale to *Jones & Merricks* became due, in the autumn of 1815, *Jones* offered to the defendant to make payment of the 6,500 dollars, in window glass, at the wholesale price, and to give good security for that amount, with interest. That *W. Soulden & Co.,* by letter, offered the defendant security to perform any terms of payment *Jones* should make, payable in window glass; and on the 16th of *February*, 1816, the agreement was reduced to writing, and executed by the defendant, and *W. Soulden & Co.,* by which the latter covenanted to pay the defendant 6,500 dollars, and interest, then amounting to 7,000 dollars, in window glass, at the wholesale price; viz. 1,400 dollars in hand, and the like sum yearly, for four years, with interest; and to give his bond, and a mortgage on the premises, as security; and that to indemnify *W. Soulden & Co.,* it was agreed between the defendant and *Jones,* (who had become solely interest-

ed in the purchase by him and the *Merricks*) that the de-
fendants should convey the premises to *W. Soulden & Co.*,
and the defendant exonerated *Jones* from any claim for the
purchase money, or for the use and occupation of the pre-
mises, from the time of the sale to *Jones & Merricks* in
1814, to the 16th of *February*, 1816. That the defendant
received the 1,400 dollars of *W. Soulden & Co.*, on the
contract. That the defendant concealed from the plain-
tiffs that he had obtained any security from *W. Soulden
& Co.*, for the moneys due, on the sale, to *Jones & Merricks* ;
and on the 29th of *April*, 1816, applied to the plaintiffs to
carry into effect the contract of sale of the 4th of *Sep-
tember*, 1815, on the ground and pretence that the contract
of sale to *Jones & Merricks* had failed. That the defend-
ant was then bound, by his situation and agency, to have
made a full disclosure to the plaintiffs of the subsisting
contract with *W. Soulden & Co.* and of his agency there-
in; but the plaintiffs were left in ignorance of the fact,
and were led to believe from the prior representations of
the defendant, that all prospect of payment from *Jones
& Merricks* was hopeless; and that the matter remained in
the same situation as on the 4th of *September*, 1815 ; and
the plaintiffs executed a *release*, dated 29th of *April*,
1816, to the defendant, of all their interest in the premises,
under the agreement of the 1st of *April*, 1812, upon the
terms of the agreement of sale of the 4th of *September*,
1815. That continuing in ignorance of the defendant
having obtained the security from *W. Soulden & Co.*, the
plaintiffs sued the defendant at law, for the moneys due
under the agreement of the 29th of *April*, 1816, and the
cause was tried at the *Madison* circuit, in 1817. That a
few days before the trial, the plaintiffs obtained some in-
formation of the fraud of the defendant, in suppressing
all information of the security given to him by *W. Soul-
den & Co.*, and the plaintiffs, at the trial, offered to prove
the facts above stated, to establish the fraud; but the

judge before whom the cause was tried, was of opinion, that the plaintiffs' remedy was in Chancery; and directed a verdict to be taken for the plaintiffs, for the balance of rent received by the defendant of *W. Warner*, being 116 dollars, and 6 cents, due the plaintiffs, and for the sum of 866 dollars, mentioned in the agreement of the 29th of *April*, 1816. That the plaintiffs waive all claim at law to the moneys so recovered, except for the rent, and submit their claim to the court; and *prayed*, that they may be relieved from the *release* made by them to the defendant, and be let in to the benefit of the security given by *W. Soulden & Co.* to the defendant; and that the defendant may account for all sums received by him, or reserved on any lease of the premises, &c.

The defendant, in his answer, denied, that he was ever the *agent* of the plaintiffs, in relation to the premises. He admitted, that on the 30th of *November*, 1816, he agreed to sell the premises to *J., M. & M.* for 6,500 dollars, payable in instalments, with interest, and that the contract comprises the whole interest of all the parties; but he denied that he made this agreement with the assent of the parties, or either of them; or that he made it as agent of the plaintiffs; but acted in his individual capacity, and covenanted to lease the premises for the remainder of the term which he and the plaintiffs had in the same, and that the plaintiffs should execute the lease. The defendant alleged, that the inability of *J., M. & M.* to perform their contract was known to the plaintiffs; and that the plaintiff *G.* proposed a division and sale of the premises, on the ground of that inability; and that the property was, accordingly, advertised for sale, at auction, by all the parties; and the defendant, as the highest bidder, purchased it, at 2,705 dollars; and the parties, afterwards, executed the memorandum of the agreement of the 4th of *September*, 1815. That he never received any payment of *J., M. & M.*, nor any rent; that conceiving that

**1818.**

**SANGER**
v.
**WOOD.**

*June 29th.*

the plaintiffs had no interest in the contract with *W. S. &*
*Co.* he did not inform them of it; and denies any fraudu-
lent intent or concealment, &c.

The cause came on to be heard on the bill and answer;
and was argued by *Wells*, for the plaintiff, and *Riggs*, for
the defendant.

*August 24th.*

THE CHANCELLOR. If the plaintiffs had done nothing to
affirm the contract of the 29th of *April*, 1816, after the
agreement between the defendant and *W. Soulden & Co.*
had come to their knowledge, I should have been strongly
inclined to relieve them from that contract. It is true, the
allegation of fraud, and of any direct and authorized agency,
on the part of the defendant, is denied in the answer; and
we have no other proof in the case but such as the answer
and the documents mentioned in the pleadings afford.
But, from those documents, I am induced to think, the de-
fendant was bound to have disclosed to the plaintiffs, in
*April*, 1816, his prior dealings with *Soulden*, as well as the
new agreement with *Jones*, of the *January* preceding. The
relationship between the parties arising under the original
contract of 1812, and the agency which the defendant, *in*
*fact*, assumed in the management and disposition of the
entire interest of all the parties, imposed upon him the
duty of a frank and full disclosure of the whole case,
when the parties came to a final conclusion of their con-
cern, in *April*, 1816. If the contract, of the 4th of *Sep-*
*tember* preceding, had been definitive and absolute, then
the defendant would not have been under any obligation to
disclose his subsequent negotiations with *Jones* and with
*Soulden*, who came in to assist *Jones*. But that contract
of sale was not absolute, for it was expressly declared,
that in case the sale to *Jones & Merricks*, could be enforced,
it was to be, and the contract in that case to be void.
The plaintiffs ought to have been informed what *Jones*'
had since done, and what *Soulden* had since promised, so

that they might have exercised their judgment on the question, whether the original agreement could have been enforced, and how far the substitution of *Soulden & Co.* was a mere continuation (as I think it was) of the original agreement.

For these reasons, I should have been inclined to have relieved the plaintiffs. The case, however, as it appears before me, is not of a very gross kind, or one presenting claims for any extraordinary indulgence. In my opinion, the plaintiffs may justly be considered as having elected to take their remedy at law under the contract of *April*, 1816. The bill states that the plaintiffs sued at law under that last contract, and which was, of course, in affirmance of it; and that, a few days before the trial at the *Madison* circuit, they discovered the fraud now set up as a ground to rescind that contract. And yet, notwithstanding that discovery, they go to trial in the suit on that contract, and take a verdict for the moneys due from the defendant under it, and, afterwards, judgment is entered up by them on that verdict; and, in *April* last, they even apply to this court for leave to take out execution at law on the judgment so recovered. The last motion was, indeed, made on the ground that it might not prejudice their rights in this suit, but I am induced to think they had already waived those rights by their previous proceedings. The suit at law, and the action here, are inconsistent with each other, since the one affirms, and the other seeks to disaffirm, the contract in question. It is probable the amount of the judgment may have been already collected, and the plaintiffs could not, for a moment, be permitted to keep the moneys recovered under that contract, if they should succeed in their bill to have it annulled. In a case where the remedies sought are so absolutely repugnant to each other, the plaintiffs ought to have made their election at once, after they came to the knowledge of the facts. If they meant to have disannulled the contract of *April*,

**1818.**

SANGER
v.
WOOD.

1816, then it was vexatious, as well as useless, to have gone on to a trial, and judgment and execution. They had no right to try the experiment how much they could recover at law under the contract, (for the bill admits the suit at law was brought upon that agreement,) before they elected to waive it, and then retaining their verdict and entering judgment at law, apply to this court to set the contract aside. This proceeding would be giving the plaintiffs a double advantage, and is unreasonable and inadmissible.

Any decisive act of the party, with knowledge of his rights and of the fact, determines his election in the case of conflicting and inconsistent remedies. If he take out a commission of bankruptcy, he cannot sue the bankrupt at law, for that would be again superseding the commission. (*Ex parte Ward,* 1 *Atk.* 153. *Ex parte Lewes,* 1 *Atk.* 154.) So, charging a party in an execution at law after a commission issued, is an election to take the remedy at law, and the party must abide by it. (*Ex parte Warder,* 3 *Bro.* 191. *Ex parte Cator,* 3 *Bro.* 216.) So, again; if a party seeks relief in equity by bill waiving a forfeiture at law, though he fail in obtaining relief, he cannot afterwards insist on the forfeiture at law. (1 *Sch & Lef.* 441.)

There cannot be any doubt of the principle, that equity will not relieve a party fully apprized of his rights, and deliberately confirming a former act. The doctrine has been again and again declared. (3 *P. Wms.* 294, note E, &c. 1 *Atk.* 344. 1 *Ball & Beatty,* 340.) And I consider the going to trial in the action at law, and especially the entry of judgment afterwards upon the verdict, as a decided confirmation of the settlement in *April,* 1816.

I shall, accordingly, dismiss this bill; but from the opinion which I have formed upon the merits of the transaction, I am not willing to charge the plaintiffs with costs, and I shall, consequently, dismiss the bill without costs.

Order accordingly.