| 36 | 513 |
| 59 | 26 |
| 36 | 513 |
| 88 | 120 |
| 36 | 513 |
| 40ap423 | |

JULIA RILEY AS ADMINISTRATRIX DE BONIS NON OF MARY RILEY, DECEASED, RESPONDENT, v. THE ALBANY SAVINGS BANK, APPELLANT.

*Deposit of money in a savings bank — a party claiming under a special agreement must himself comply with its terms — the authority of a clerk of the bank to make a special agreement must be proved — insanity — what facts will not charge a bank with knowledge of the insanity of a depositor — a bank is not chargeable with knowledge of the insanity of the drawer of a check upon it — waiver of notice of demand required by by-laws — election of remedies — a principal who ratifies the act of an agent cannot thereafter disavow it.*

August 26, 1882, Patrick Flannagan, accompanied by Patrick H. Riley and Margaret Smith, deposited in the defendant's savings bank $876.75 belonging to Mary Riley, to her credit, upon the agreement that the money should not be withdrawn unless the three were present who made the deposit. The money having been paid to Flannagan during the life of Mary Riley upon the production of the pass-book and Mary Riley's check, the plaintiff, who was subsequently appointed the administratrix of Mary Riley, rought this action to recover the amount of the deposit, alleging among other facts that the defendant was guilty of culpable negligence in paying the money in the absence of the three persons who were present when the deposit was made. The defendant moved for a nonsuit, upon the ground that no demand had been made by the plaintiff in the presence of the three persons by whom the deposit was made. The motion was denied upon the ground that this agreement was only operative during the lifetime of Mary Riley.

*Held,* that the agreement affected the deposit as much after Mary Riley's death as before, and that the court erred in construing it otherwise.

Upon the trial evidence was given tending to show that Toole, the bank clerk, with whom it was claimed the alleged agreement was made, had no authority to receive money except upon the terms and conditions printed in the pass-book, and that all other and special terms could only be made by the authority of the president of the bank. There was no evidence to show that Toole had ever made any such verbal agreement which had come to the knowledge of the defendant.

*Held,* that the defendant was not bound by the agreement so made by Toole. (BOCKES, J., dissenting.)

September 19, 1882, Patrick Flannagan, not fraudulently, but at the suggestion of the overseer of the poor of the city of Albany, who refused to assist Mary Riley after learning that she had this money, procured from the said Mary Riley a check upon the bank, and upon presenting the same thereat, together with the pass-book, and proving the execution of the check by a subscribing witness, he received the amount so deposited. The court found that Mary Riley was of unsound mind at the time the check was signed and incapable of executing the same; that the bank did not know she was insane, but that from the statement made at the time of the deposit, showing her old age and want of education, the circumstances of the deposit and the unusual agreement then made, the bank had notice which should have put it upon inquiry, and that having failed to make such inquiry the payment should be disallowed.

*Held,* that the statements made at the time of the deposit were not such as would raise a suspicion of the insanity of the depositor, and that the court erred in holding that they were sufficient to put the defendant upon inquiry.

That as the payment was made in good faith, and in the usual course of business, and without notice of the insanity of the depositor, it could not be set aside upon the application of her administrator.

An executed contract, made in the usual course of business and founded upon a valuable consideration, cannot be set aside by one of the parties thereto, nor by his representatives after his death, on the ground of his unsoundness of mind, when he has received the benefit stipulated in the contract, and the other party has no notice of his incapacity, and was guilty of no fraud or imposition.

The by-laws of the bank provided that money could be withdrawn on the third Wednesday in January, April, July and October, one month's previous notice having been given. A demand for the money had been made by the administrator and payment refused.

*Held,* that as it appeared that the president of the bank had stated to the administrator that the money had been paid out, and as the pass-book was in its possession, the right to require the month's notice must be deemed to have been waived.

After Riley had been appointed administrator, and in October, 1882, he presented a verified petition to the surrogate, under section 2706 of the Code of Civil Procedure, charging Flannagan with having corruptly procured an order from Mary Riley, knowing her to be insane, and with having withdrawn the money from the bank, and further charging that he then had the same in his possession; and praying that he might be directed to surrender the possession thereof to the petitioner. Flannagan having appeared on the return of a citation, and having admitted that he obtained the money from the bank as the proper money of Mary Riley, and that the same was in his possession, a decree was entered directing him to deliver the same to the administratrix; and for his failure to comply therewith he was committed to the county jail where he remained until discharged therefrom by the surrogate, because of his inability, from sickness, to bear longer confinement.

*Held,* that the administrator, by claiming in his petition and procuring a decree

of the Surrogate's Court adjudging that the money in Flannagan's hands belonged to the estate of Mary Riley, ratified the act of Flannagan in with holding the money, and could no longer claim that the bank still owed to him the same money, or bring an action against it to recover the amount of the deposit.

That the administrator had an election to treat Flannagan's act in drawing the money in two ways, viz., either to ratify or to disavow it; and that having elected to ratify it, he could not thereafter disavow it. (BOOKES, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

On the 26th day of August, 1882, Patrick Flannagan, accompanied by Patrick H. Riley and Margaret Smith, brought to defendant's bank $876.75 which, in fact, belonged to Mary Riley, since deceased, and deposited it to her credit and received the usual pass-book, showing such deposit to her credit. The money was received by defendant in good faith and in the usual course of business. The parties making the deposit informed the defendant that Mary Riley was an old woman and could not write. It is claimed by plaintiff that at the time of the deposit Toole, the defendant's clerk, was informed by one of these three persons that the money should not be withdrawn unless all of those three persons were present. Evidence to that effect was admitted on the trial against defendant's objection; and evidence to the contrary was given. The learned justice who tried the case found that such was the fact, viz.: that the defendant was informed that the money should not be withdrawn, unless the three were present who made the deposit, and that Toole replied that it was so understood. No such agreement was contained in the pass-book.

On the 19th of September, 1882, said Patrick Flannagan procured a check, or order, on the bank, dated that day, to be signed by Mary Riley, payable to him or bearer, for the sum of $876.75. This was signed with her mark and witnessed by J. C. Johnson. On the next day Flannagan presented that check, with the bank book, to the defendant and demanded payment. The signature of the subscribing witness was identified at defendant's request, and the defendants thereupon paid Flannagan the money in good faith. It is found by the court that Mary Riley was at that time, from disease and old age, of unsound mind, and did not comprehend the act she did.

Mary Riley soon after died, and letters of administration were issued October 3, 1882, to Patrick H. Riley, one of the three persons above named.    On the 7th of October, 1882, Patrick H. Riley, as administrator, presented a petition to the surrogate, stating that he and Flannagan took the money and deposited it in the bank (as above stated), with the agreement that it should remain till the decease or recovery of Mary Riley ; that Flannagan fraudulently and corruptly procured an order on the bank for the payment in full of the sum, and drew the same from the bank; that the petitioner, as administrator, had demanded the money from Flannagan, and that Flannagan witheld the same.    The petitioner asked a citation for the discovery of the money, and that Flannagan be ordered to surrender it.    A citation was granted and served.    Flannagan appeared and in open court admitted that he did, on the 20th of September, 1882, obtain from said bank said $876.75, the proper money of Mary Riley.    An order reciting these facts was made October 11, 1882, and therein it was decreed that Flannagan was in possession of said $876.75, and he was adjudged to deliver it forthwith to Patrick H. Riley, administrator.    For failing to do this Flannagan was committed to jail, and was afterwards released therefrom on account of the condition of his health.

Patrick H. Riley died after the commencement of this action and Julia Riley was appointed administratrix and substituted in his place.

In the complaint it was alleged that the defendant was especially guilty of culpable negligence in paying the money to Flannagan in the absence of all the three persons who were present when the deposit was made, and without their consent.

After the plaintiff had rested his case, the defendant's counsel moved for a nonsuit upon the ground that no demand had been made for the money, which complied with the terms of the agreement upon which the plaintiff claimed the deposit was made ; that is, that no demand had been made when the three persons who made the deposit were present.    The court held that the agreement was only operative during the lifetime of Mary Riley, and that when she died the money could be withdrawn by her administrator, and denied the motion.    To which ruling the defendant excepted.

The learned justice who tried the case decided in her favor, and the defendant appeals.

*L. G. Hun*, for the appellant.

*W. R. Guthrie*, for the respondent.

LEARNED, P. J.:

If there was any conversation at the time of the deposit that the money was to be paid only when Flannagan, Riley and Smith were present, still there is not one word of evidence that this agreement, or understanding, was only for the life of Mary Riley. Nor does the learned justice so find. It is mere assumption that her death made any change in that so-called agreement. If Flannagan had no right to draw the money on Mary Riley's order, unless Patrick H. Riley and Margaret Smith were present, then Patrick H. Riley, as her administrator, had no right to demand the money unless the others of the three, viz., Flannagan and Smith, were present.

The alleged agreement said nothing as to the person who might draw the money; but only as to the persons who were to be present when it was drawn. And, if any valid agreement of that kind was made, it affected the deposit just as much after Mary Riley's death as before. So that Patrick H. Riley never made a valid demand.

But, again, the written pass-book, with the regulations therein contained, was the contract between the parties, and the alleged statements to Toole by persons who brought the money did not bind the bank. Toole had no authority to make such a contract as is alleged. No discretionary power was given to him. This is positively proved. But it is found, as a matter of law, by the court that Toole had such apparent power to make the agreement that the bank was bound by its terms. It is true that a principal is bound, not only by the actual authority which he gives an agent, but by such apparent power as the authorized acts of the agent justify third persons in believing him to possess. Now, the authorized acts of Toole were to receive money for the bank from depositors, and to give pass-books therefor. There is no evidence that he had ever made any verbal agreements or promises in regard to deposits, and still less that any such verbal ageements had come to the knowledge of the bank. There was then no evidence of any apparent power in Toole, except his receiving money and giving pass-books therefor and entering the money to the depositor's

credit.  How did this authorize him, in appearance even, to make this verbal agreement?  On the contrary, the proof was clear that deposits, on any other terms than those of the rules, could only be made by the authority of Mr. Martin, the president.  But agreements must be mutual.  Can it be claimed if Mary Riley had called at bank the next day with the book and had demanded her money, that the bank could have refused to pay until those three depositors were present?  Would not the pass-book be the contract, and the only contract between her and the bank?  Could Mary Riley be deprived of her money if any one of those three persons had refused to be present?

Indeed, it seems of little consequence whether or not the alleged conversation took place, in regard to the presence of the three persons when the money should be drawn out, for this reason. The money was Mary Riley's.  It was deposited in the bank without her knowledge or consent.  She was therefore not a party to any agreement as to the manner of drawing it out.  Unless, then, the bank should insist upon the terms of the alleged conversation, she had a right to draw out the money, and the bank had a right to pay it, as the bank and Mary Riley might choose.  The important question, then, is whether Mary Riley did draw out the money.  If she did, it matters not to her representative what were the alleged conditions of deposit.

We come then to the matter of the check, or order, signed by Mary Riley.  That this check was signed by her is not disputed.  It is further found that it was obtained by Flannagan, not fraudulently, but at the suggestion of the overseer of the poor, who refused to assist Mary Riley, after he learned that she had this money; and that the money was obtained for the purpose of supporting her.  In fact, $259 was applied to the expenses of her last sickness and her burial.  The learned justice finds as a fact that Mary Riley was of unsound mind and did not comprehend the act; and as law that therefore the check or order was not her act.  The court does not find that the bank knew she was insane, or of unsound mind, when it paid the check; but that in the statement of the old age of Mary Riley, the want of education, the circumstances of the deposit and the unusual agreement, the bank should have inquired before paying, and that the bank had notice

which should have put it upon inquiry. Now, it should be observed that according to the testimony of plaintiff's witnesses the bank was notified that the money might be drawn out, because (as they say) it was not to be drawn out except in the presence of the three persons. Therefore, according to plaintiff's witnesses, the bank was informed that it could be drawn out in the presence of those three, who should be "satisfied with the draft." And as it .could be drawn out only on Mary Riley's check or order, and as they were to be satisfied with it, the plaintiff's own witnesses showed that the bank, at the time of the deposit, was notified that *it might be drawn out on Mary Riley's check or order.* Hence it is plain that no knowledge of her insanity was given to the bank, and no notice of any facts which should cause a suspicion of her insanity. The learned justice says that knowledge of her age, want of education, etc., should have induced the defendants to inquire as to her mental condition. Her want of education, that is her inability to write, known to the bank, would have thrown suspicion on any writing purporting to be her signature. And the bank properly required the identification of the witness to the check: But we do not think that the old age of a depositor, or her want of education, requires a bank, before paying a check, to ascertain affirmatively that the drawer is sane.

An executed contract, made in the usual course of business and founded upon a valuable consideration, cannot be set aside by one of the parties thereto, nor by his representatives after his death, on the ground of his unsoundness of mind, when he has received the benefit stipulated in the contract, and the other party has no notice of his incapacity and was guilty of no fraud or imposition. (*Mut. Life Ins. Co.* v. *Hunt,* 79 N. Y., 541, and cases there cited.) The cases are very numerous on this point. We may notice *Molton* v. *Camroux* (4 Ex., 17); *Elliot* v. *Ince* (7 DeG., M. & G., 475); *Beals* v. *See* (10 Penn., 56); *Lancaster Bank* v. *Moore* (78 id., 407); *Behrens* v. *McKenzie* (23 Iowa, 333).

No other rule would be tolerable. Especially in the case of a bank having numerous (in this case over 14,000) depositors. The bank cannot investigate the sanity of a depositor whenever a check is presented. The plaintiffs err in calling the check a forged check. Of course payment on a forged check is no protection to the bank.

But payment on the genuine check of an insane person, without notice of the insanity, is a valid payment. (See *Howard* v. *Digby*, 2 Cl. & Fin., 634; *Drew* v. *Nunn*, L. R., 4 Q. B. Div., 661.)

But, again, there was really no notice to the bank of Mary Riley's insanity, and no occasion for the bank to inquire. Flannagan, who deposited the money in the first place, and who was himself present at whatever was said at the time of the deposit, was the man who brought the check of Mary Riley to the bank; and who, by indorsing it, vouched for its validity. As is pointed out above, the bank, at the time of the deposit, was in substance informed that the money might be drawn out; and of course this meant upon Mary Riley's order. Flannagan then comes, in accordance with this notice, and brings Mary Riley's check and draws the money. What inquiry should the bank have made? And we must bear in mind that the degree of inquiry to be made must be proportioned to the circumstances. And that these three persons, if they had desired to prevent the money from being drawn by Mary Riley, could have given such a full and unquestionable notice that the bank would have refused to pay any checks. Plainly enough they did not so intend.

The by-laws of the bank provide that money can be withdrawn on the third Wednesday in January, April, July and October, one month's previous notice having been given. After the letters of administration had been issued the administrator demanded this money of the bank and the bank refused payment. No reason for the refusal appears to have been given; no previous notice of a month had been given, or is alleged. The learned justice held that, as the bank had unqualifiedly refused to pay, this action was immediately maintainable. It appears that there had been a prior conversation with the president of the bank, in which he stated that the money had been drawn on by Mary Riley; and it appears, also, that the pass-book had been surrendered. We think that these facts are sufficient to show that the bank put its refusal to pay on the previous payment, and may justly be held to have waived the matter of notice.

Still another question remains. As has been stated above, Patrick H. Riley, the administrator, charged Flannagan with having corruptly procured from Mary Riley an order on the bank, and with having, by means of that order, received this money, and

with having the same in his possession. These facts were admitted before the surrogate in the proceeding against Flannagan ; that is, he admitted that he obtained from the bank $876.75, *the proper money of Mary Riley, deceased,* and that he was in possession thereof ; and an adjudication to that effect was made. To compel the delivery he was imprisoned under the surrogate's mandate, made October 17, 1882, and was, by the surrogate, discharged November 11, 1883. This proceeding was under section 2706 *et seq.* of the Code. By section 2710, as amended, if the person cited answers in writing that he is the owner of the property, the proceeding must be dismissed. As Flannagan did not so answer, the proceeding was conclusive between him and the administrator that the money in his possession was Mary Riley's when Flannagan received it from the bank. If it was Mary Riley's, then it necessarily follows that the bank had paid Mary Riley what it owed her. If Flannagan had obtained the money by fraud from the bank, then he might be liable to the bank for the fraud. But he could not be liable both to the bank and also to Mary Riley, or her representative. And as her representative had obtained a judicial decision against him, deciding, as between them, that this was Mary Riley's money, this was plainly a ratification by her representative of Flannagan's act in obtaining the money. The bank, therefore, could in no event recover back the money from Flannagan ; because, whether Flannagan obtained it wrongfully or rightfully, Mary Riley's representative had chosen to ratify his act by a judicial decision, establishing that the money in his hands belonged to her estate.

If her represensive had chosen not to ratify his act, but to treat it (as he now seeks to do), as unauthorized, then he should have done what he is now doing, that is, he should have sued to recover the deposit. He had his election to treat Flannagan's act in either way, viz., to ratify it or to disavow it. He made his election and ratified it. He now seeks to disavow it.

That the present remedy is inconsistent with the proceedings against Flannagan is evident. Those proceedings are just as effectual as a judgment against Flannagan would have been. And it is plain that this plaintiff cannot consistently have a judgment against the bank for the money and against Flannagan for the

same money also. This is not the case of a specific thing which the plaintiff is endeavoring to recover. It is only a debt which the bank either owes or does not owe. And the bank cannot owe it if Flannagan does.

Where there exists an election between inconsistent remedies the party is confined to the remedy which he first prefers and adopts. The remedies are not concurrent, and the choice between them once made, the right to follow the other is forever gone. (*Rodermund* v. *Clark*, 46 N. Y., 354; *Sanger* v. *Wood*, 3 Johns. Ch., 416; *Borell* v. *Newell*, 3 Daly, 233; *Scarf* v. *Jardine*, 7 Appeal Cas., 345; *Morris* v. *Rexford*, 18 N.Y., 552; *Kennedy* v. *Thorp*, 51 id., 174; *Bank of Beloit* v. *Beale*, 34 id., 473.) This doctrine has been so frequently decided that a citation of further authorities can hardly be necessary. If the bank had been the bailee of some specific property of Mary Riley, and had wrongfully delivered that to Flannagan, then it would not be inconsistent for the bailor to seek to recover the specific article from Flannagan, and to sue the bank for the breach of the bailment; because, the wrong done to the bailor by the bank would have been in the wrongful delivering of the article to Flannagan. But the present case is no bailment. The bank was a debtor to Mary Riley. That the bank should pay certain money to Flannagan *was no wrong to her*. The bank paid its own money, not her's to Flannagan. Whether the payment to him discharged the debt to her depends on one of two things, first, that he was authorized to receive it at the time; or, second, that she subsequently ratified his act. If she subsequently ratified it, then she elected to hold Flannagan liable as for money received to her use. This is the election of a remedy entirely inconsistent with an action against the bank as being still her debtor.

For these reasons the judgment should be reversed and a new trial granted, costs to abide the event.

BOCKES, J. (dissenting):

This is an appeal by the defendant from a judgment rendered after trial had before a justice of this court, without a jury; a trial by jury having been duly waived.

The facts of the case, as found by the learned judge, are substantially as follows: That on the 26th day of August, 1882, the

plaintiff's intestate, Mary Riley, was possessed of $876.75, which money was on that day deposited with the defendant to the credit of said intestate by Patrick Flannagan, Patrick H. Riley and Maggie Smith, who took from the defendant the usual pass-book, showing the deposit in the defendant's bank of that sum; that when the deposit was made said intestate, aged about seventy years, was sick, helpless and of unsound mind, and that the defendant's teller, who received the deposit, was then informed that the money was not to be withdrawn unless the three who made the deposit were present, and that the teller replied that it was so understood; that afterwards, and on the twentieth of September, the said Patrick Flannagan procured a check to be signed by the intestate, by her mark witnessed by James C. Johnson, for the amount of the deposit, payable to his, Flannagan's, order, which check was indorsed by the latter and was by him presented with the pass-book to the defendant's bank, and the entire amount of the deposit was paid over to him thereon; that said intestate, at the time she so, as aforesaid, executed the check, was of unsound mind and did not comprehend the act; that after the death of the intestate, which occurred October 1, 1882, Patrick H. Riley was duly appointed administrator of her estate and immediately took proceedings before the surrogate under section 2706 of the Code of Civil Procedure against Flannagan for the discovery of the assets of the deceased; that the petition of the administrator, on which the proceedings were instituted, set forth substantially the facts above detailed; that those proceedings resulted in an order made by the surrogate, that Flannagan should pay to the administrator said sum of $876.75, so as aforesaid drawn from the bank by him on the invalid check, and for non-compliance therewith he was imprisoned for a time, when he was discharged because of ill health and his inability to answer the requirements of the order; and that prior to the commencement of the action the administrator exhibited to the defendant his letters of administration, and demanded the amount of the deposit, payment of which was refused by the latter. The administrator, Patrick H. Riley, having died, the present plaintiff was appointed to succeed him. Some other facts were found by the learned judge, hereafter to be noted as occasion may require. As matter of law it was decided that the plaintiff was entitled to recover against the defend-

ant the amount of the deposit, less $259 actually paid from its avails for the intestate's benefit.

The leading questions in the case are : (1) whether it was understood when the deposit was made by and between the teller or clerk of the bank and the persons making the deposit that it was not to be withdrawn unless the three persons making it should be present; (2) whether the intestate, at the time she signed the check by making her mark, was of sound mind and comprehended her act, its purpose and effect; and (3) whether the proceeding before the surrogate, taken by the administrator to discover assets of the deceased, was an adoption of Flannagan's act in withdrawing the deposit, constituting an election to accept him as debtor which barred an action therefor against the bank.

The first two of these questions were prominent subjects of inquiry on the trial. Much evidence was given *pro* and *con* by the respective parties bearing upon them. The learned judge before whom the case was tried found in favor of the plaintiff on both. We have looked into the evidence submitted, as we think, carefully, and although the case, on these points, is not free from possible doubt, we are unable to say the conclusion certified to us on the record is not sustained by the proof. Indeed, we are inclined to the opinion that the preponderance of proof is with the plaintiff on both of these questions. So it appears to us on a thoughtful, critical reading of the printed case laid before the court on the appeal. We must hold those questions of fact well found, as stated in the record. There are, however, several important questions of law to be considered in connection with those facts. It is insisted that parol proof of what occurred at the time of making the deposit was inadmissible to show an understanding differing from the printed rules and regulations contained in the pass-book then delivered, which rules and regulations prescribed the terms and conditions to be observed on making deposits and withdrawing them from the bank; that such rules and regulations must be deemed to express the contract pursuant to which the deposit was made. This proposition is based on the presumption which must prevail in a case where the deposit is made in the ordinary way and the pass-book is accepted by the depositor without any special agreement or condition affecting it. In such case the party accept-

ing the pass-book containing the printed regulations will be held to
have notice of them and of their terms and conditions, and will be
held to their observance.    The same rule applies to bills of lading
and receipts given by common carriers containing provisions as to
the manner of carrying and delivering the property.    Nor in such
case can the party object that he omitted to read the regulations
contained in the pass-book, bill of lading or receipt accepted by
him    on    delivering    the    money    or    property.    The    regula-
tions    (being    accepted)    constitute    the    contract    between    the
parties,    and    the    case    will    be    controlled    by    the    rules    of
evidence    applicable    to    agreements    in    writing    signed    by    the
parties to them.    The principles of law above stated are supported
by numerous decisions, to which we are cited by the learned counsel
for the appellant in his brief.    But it should be observed that in
these cases the party is bound to the conditions and regulations on
the legal presumption that he had notice of and accepted them.
As said by Judge CHURCH in *Appleby* v. *Erie Co. Savings Bank*
(62 N. Y., 17), they constitute, if properly communicated and
assented to by the depositor, the contract between the parties.    So in
*Allen* v. *Williamsburgh Savings Bank* (69 id., 314) it is laid down
that when the bank has prescribed rules to which the depositor has
assented, they constitute the agreement between the parties, and
each must conform to them to preserve rights against the other.
Now, here the depositor did not sign any paper, any instrument
containing the conditions of the deposit.    So the instrument (calling
it such) did not on its face show its acceptance by the depositor, as
would an instrument signed by both parties.    Its acceptance here
must be shown by parol proof, and this even in case the acceptance
rested on presumption ; for, in that case, proof of the deposit
and that it was entered in the pass-book and that the pass-book was
taken and carried away by the depositor without objection, would
be the evidence on which to base the presumption of an acceptance
of the conditions printed in the book.    But the parol proof here
was part of the *res gestæ* as to the acceptance.    It showed that the
acceptance of the pass-book with whatever it contained was accom-
panied by an express understanding, an express agreement, that the
deposit should not be withdrawn unless the three persons making it
should be present.    There was no acceptance of the pass-book,

except with this understanding; and if an acceptance be insisted on it must be subject to this provision. The case was not an ordinary transaction between a depositor and the bank, when by a mere deposit of money and the taking and carrying away of a pass-book, without comment, an acceptance of the printed regulations accompanying it would be presumed, to the exclusion of all qualification of them; the transaction was made special by the stipulated terms of acceptance. Thus the acceptance here proved carried with it the condition insisted on, indeed this became the basis of the acceptance. I am of the opinion that it was competent to show by parol in this case the circumstances attending the acceptance of the pass-book by the depositor. If so, whatever was agreed upon in that regard was admissible and bound the parties. Nor can it be maintained that the defendant's teller or clerk could not bind the bank by the arrangement here insisted on, on the ground that he acted in excess of his power. He was authorized to receive deposits. He had the apparent right to make the arrangement. In so doing he was acting within the scope of his employment. The rule is that an agent may bind his principal within the limits of the authority with which he has been apparently clothed with respect to the subject-matter. The question is not what power was intended to be given or was really given to the agent, but what power a third person who dealt with him had the right to infer he possessed from his own acts and those of his principal. So it has been often held that, as respects third persons, the act of an agent, even in abuse or excess of his authority, if within the general scope of his employment, is binding upon his principal. I am of the opinion that the conclusion of the learned judge, certified to us, to the effect that the deposit being made under the agreement that it could not be withdrawn unless by the persons making it, was here operative and binding upon the bank as a condition of the deposit; and it follows, as a consequence, that the payment to Flannagan constituted no defense to the action, taken in connection with the fact that the intestate was, at the time she signed the check for the withdrawal of the deposit, of unsound mind and incapable of comprehending her act in so doing. It is urged that no sufficient demand upon the bank for the money was made, before suit, to put the defendant in default in that regard, there seems to have been a

demand by her administrator after the decease of the intestate and his own appointment, and an absolute, unqualified refusal by the bank to pay. The refusal to pay was not put on the ground that the three persons who made the deposit were not present to sanction the payment, but seems to have been put on the ground that payment had already been made to Flannagan. But the refusal was absolute and unconditional. This being so, the action was at once maintainable against the objection that no sufficient demand for payment had been made.

It is further urged that the proceedings before the surrogate, taken by the administrator to discover assets of the deceased, operated as an adoption of Flannagan's act in withdrawing the deposit and constituted an election to accept him as debtor, whereby the action against the bank was barred. I think this position untenable. The proceeding was not to charge Flannagan as a debtor. Such is not the purpose of the law under which the proceeding was taken (sec. 2706, *et seq.*); the object to be attained by the law is the discovery of money or property belonging to the estate of the deceased which ought to be included in the inventory ; not to enforce payment of debts due from debtors of the deceased; there was here consequently no election of remedies. As was said in *Matter of Curry* (25 Hun, 322), the surrogate, under the provisions of law above cited, can only deal with the question of possession and can only decree that the possession be delivered to the representative of the deceased party, where it clearly appears that such possession is withheld without claim of title or right. Again, the doctrine of election of remedies applies in case of inconsistent remedies, when there is an intention, express or implied, that one shall be a substitute for the other ; to be more exact in terms, when a party has the choice of two rights to each of which he has equal right, but both of which he cannot have. Such was not this case. The suit against the bank and the proceeding before the surrogate to discover assets were in no respect inconsistent one with the other.

Nor was there any intent to ratify the act of Flannagan, and to accept him as sole debtor. This is apparent from the facts set forth in the petition to the surrogate. His wrongful possession was charged, not that he was simply a debtor to the estate. Indeed, the

question whether he was or was not debtor to the estate was not, as has been before stated, within the provision of the law under which the proceeding was taken. In conclusion I am of the opinion that the judgment directed by the learned judge in favor of the plaintiff should be affirmed.

LANDON, J., concluded, after much examination, to concur with LEARNED, P. J.

Judgment reversed, new trial granted, costs to abide event.