Ingraham, J.
This action was originally brought by the plaintiff to recover for two causes of action. The first cause of action being to recover the amount due under the contract between the plaintiff and the Atlantic and Pacific Telegraph Company, and which the defendant undertook and assumed to perform. And the second cause of action being for the damages sustained by the plaintiff for the breach of the contract by the defendant in having refused and neglected to carry out the contract on the 11th day of March, 1882. and demanded judgment against the defendant for the sum of $32,000, with interest from April, 1882, and the sum of $650,000 damages for the breach of contract.
The action was tried before a referee who found that the contract was a valid and subsisting contract between the plaintiff and the defendant; that from the 3d day of February, 1881, to and including the 22d day of June, 1882, the plaintiff fully performed and fulfilled on his part all the terms and conditions of said contract, but that defendant did not perform and fulfill all the conditions and terms of said contract on its part to be performed and fulfilled, specifying particularly the instances in which the defendant has failed to fulfill its obligation.
The referee then found as follows:
“Eleventh. That defendant collected for and on account of the plaintiff from the several newspapers and newspaper proprietors who received and were served with such telegraphic news reports, the sums and prices that had been agreed to be paid by said newspaper reporters and proprietors to plaintiff for said news reports, from the 3d day of February, 1881, to the 22d day of June, 1882, that the collections so made by the defendant for said plaintiff under the said contract amount to the aggregate sum of $157,800.
“ Twelfth. That the telegraph service rendered by the defendant to the plaintiff, from the 3d day of February, 1881, to the 22d day of June, 1882, under terms and conditions of said contract, amount to the sum of $78,500 for what is named as the regular service in the third clause of said contract and the sum of $16,772.58, for additional or extra service in excess of 6,750 words per day as provided in the fourth clause in said contract. The whole of said service under said contract during said time, amounts to the aggregate sum of $95,272.58, which *280 the defendant was authorized under- said contract to retain and from said collections to account to and pay the balance to the plaintiff, and the amount that the defendant should have to account for and pay to the plaintiff, during said time was the sum of $62,627.42, of which and on account-of which, the defendant paid the aggregate sum of $45,750, leaving a balance due and owing to the plaintiff from the defendant the sum of $16,777.42.
The refereee further found that by reason of the failure,, nejglect and refusal of defendant to fulfill and perform the terms and conditions of the contract on its part and because of the breach and breaches of the contract by the defendant therein before stated, the plaintiff suffered great loss and damages by reason of the failure, neglect and refusal of the defendant to fulfill and perform the terms and conditions of the contract on its part to be fulfilled and performed, to the amount of $220,306.
And as a conclusion of law the referee found that the contract was_ and is a valid and legal contract by and between'the said plaintiff and the Atlantic and Pacific Telegraph Company, and that plaintiff was entitled to judgment against the defendant for the sum of $16,777.42, with interest from June 1, 1882, on account of the balance due him from the collections made by defendant for plaintiff, over and above the amount which the defendant by said! contract was entitled to retain out of said collections, as compensation for the said telegraph service under said contract, and, also, for the sum of $220,306, as damages for the several breaches of the said contract set forth in the complaint, with costs.
From the judgment entered on this report of the referee the defendant appealed, and on that appeal it was ordered by the general term that the judgment as to the first cause of action, set forth in the complaint, for $16,777.42, be affirmed, and that the judgment as to the second cause of action for $220,306, be reversed and a new trial ordered in that cause of action; thus in effect severing the action.
The new trial ordered for the second cause of action was had before a jury and on that trial a verdict was rendered in favor of the plaintiff for the sum of $250,000, on which verdict judgment was entered and from that judgment the defendant appeals.
The judgment of the general term on the former, affirming the judgment entered on .the first cause of action is an adjudication of the execution, existence and validity of the contract sued upon; the right of the plaintiff to recover in his own individual name and that the defendant was bound to perform the said contract, and whatever my individual *281 opinion may be on those questions, I think they are res adjudicada on the trial of the second cause of action.
The first cause of action having been upon the contract to recover the amount unpaid by the defendant to the plaintiff under its terms, is not an adjudication that there was a breach of the contract by the defendant, and the first question presented is whether or not on the testimony there was evidence to justify the jury that there had been a breach by the defendant of the whole contract which would relieve the plaintiff from the duty of proving a compliance with the contract on his part and sustain a verdict in his favor for the damages sustained by reason of such breach.
At the end of all the testimony in the case the defendant moved for a nonsuit upon several grounds, one of which was that the plaintiff has not proved any breach of the contract as alleged in the complaint, from which the plaintiff has been shown by the evidence to have suffered any damage whatever, and that the words or conduct relied upon as a breach of the contract by anticipation does not by itself amount to a breach of the contract, and the court denied that motion on the ground that it would not be justified on the evidence in the case in holding as a matter of law that there had been no breach, to which denial the defendant’s counsel excepted.
The evidence relied upon by the plaintiff to prove a breach of the contract consists of three letters; the first dated March 11, 1882, the second March 24, 1882, the third May 10, 1882. The first of these letters is signed by Marvin Green, president of the defendant, and after stating the execution of the contract and the action of the parties, it says: “I am therefore directed by the sub-committee to whom this subject was referred, to say to you that from and after this date you will be charged for the transmission of your press reports at the same rate as that charged for other combination of press reports in the respective territories in which said reports are handled under existing agreements, and that unless such rate is paid or secured to lie paid to this company the service will be discontinued. ”
No reply was made to this letter, but plaintiff continued, to furnish press reports to the defendant for transmission, which reports were duly transmitted as required by the said contracts by the defendant. Subsequently, and on March 24, 1882, the president of the defendant sent another letter to the plaintiff, which stated that he was authorized by the proper committee of the board of directors of the defendant’s company to say that they would send the plaintiff news reports of a minimum of five thousand words daily if rom New York to various places at a price in excess of that *282 “ provided by the contract,” No mention is made in this letter of the existing contract between the parties, nor is there any statement in that letter that the defendant would refuse or did refuse to carry out the contracts then in existence.
To that letter plaintiff made no reply but continued after that time to furnish reports for transmission by the defendant and which reports were duly transmitted.
Very soon after the receipt of this letter the plaintiff had a conversation with Mr. Van Horn, the vice-president of the defendant at which he informed Van Horn that the rates that the defendant had imposed upon him, as a condition of the continuance of his business, were prohibitory; that he could not pay them and would not pay them, and that he would sooner abandon the business than undertake to pay them, and he would be compelled to discontinue business, and he would .hold the company responsible for $600,000 damages, and to that statement no reply was made.
Subsequently, a letter was received from Mr. Eckert, general manager of the defendant, which enclosed a schedule of places to which the defendant stated they would transmit and deliver plaintiff’s reports in future upon the terms and conditions named in the letter of March 24th and which also contained a schedule of tolls to be charged on incoming matter to New York city since March 11th, as provided in the letter of March 24th, above referred to, and to that letter the plaintiff made no reply, but continued as before to furnish reports to be transmitted by the Western Union Company, which reports were duly transmitted by that company and collections thereof be made by defendant as provided in the contract.
The plaintiff, however, testified that he had, about the time of the'receipt of the first or second letter, viz.: March 11th or March 24th, a conversation with Dr. Green, the president of the defendant, at which he informed him that the rates proposed to be charged were absolutely prohibitory under the present revenue he was receiving, that if he was required to pay the prices that he had been paying for the transmission, then, obviously, he was required to charge his customers a considerable increase of money; that with a view of experimenting, seeing what could be done in that direction, he would send out a circular to the various papers that he was then serving, to test their willingness to pay an increased price;. that he very much doubted whether a sufficient increase could be exacted, could be imposed to justify anything like the rates that defendant proposed to charge as a condition of continuing the-business, and that in reply to the proposition Dr. Green *283 stated that he thought it was well to do that; he thought he (the plaintiff) ought to collect more, and that he thought that his customers ought to stand by him and pay a much larger sum, and he thought that they would do it.
In pursuance of that conversation the plaintiff sent out a circular, but he did not receive any additional pay, or promise to pay, sufficient to meet the demand of Dr. Green, and told him that it was impossible to collect enough additional money to justify the new rates, and in answer to that the plaintiff does not recollect that Dr. Green made any reply.
The plaintiff, however, continued to deliver dispatches to the defendant, which were transmitted by the defendant, and on the 20'th of June, 1882, the plaintiff served upon the defendant a notice as follows: Having, on the 1st day January, 1881, made a contract with the Atlantic and Pacific Telegraph Company for the service of my national press despatches of news, which service under said contract was for a time carried on and performed by the Western Union Telegraph Co., but which the Western Union Telegraph Co., sometime since declined further to carry out, and for the performance of which service the Western Union Telegraph Co. has imposed different and more onerous terms. I hereby notify both said companies that I have not waived, and do not waive, any right or claim under said contract, but insist upon the same, and declare that I have been always, and still am, carrying out the same on my part, and am ready and able and willing, and hereby offer so to do, and ask that the same be duly carried out by the Atlantic and Pacific Co. or the Western Union Co., and no answer was received from either company in answer to that notice.
The plaintiff continued to deliver to the Western Union Co. dispatches until the 22d of June, 1882, the plaintiff ceased business under the contract, and he gives in his testimony his reasons for discontinuing the business. They are as follows: “ The Western Union Co. refused to pay me money. I had no money to carry on business, and I was crowded by the directors of the United States Cable Co. for the debts due the Cable Co. for the preceding sixty days, and having been unable to collect any money from the business to pay the expense of the business, I was obliged to stop. He was then asked the question: If you had received the money you specifically asked for, were you ready and willing and able to carry out the contract?” To which he answered, “I was.”
To sustain the plaintiff’s recovery in this action for a total breach of contract, it was necessary for him to prove *284 that the defendant had positively and absolutely refused to carry out any substantial part of its agreement.
As was said in Bogardus v. The N. Y. Life Ins. Co. (101 N. Y., 335) “The failure of one party to a contract to perform some of its obligations when it consists of a number of independent provisions, furnishes no excuse for nonperformance to the other party. It is only when the nonperformance is of a condition precedent, or when such party has wholly refused to perform, or has wholly disabled himself from completing a substantial performance, that the other party is relieved from performance or a tender thereof.”
It is also settled that “a mere assertion that a party will not be able, or will refuse to perform his contract, is not sufficient. It must be a distinct and unequivocal and absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom it was given, for if he afterward continues to urge or demand compliance with the contract, it is plain he does not consider it at an end.” Benjamin on Sales (4th Am. edition [Bennet’s], § 568), cited with approval as a correct statement of the law by the supreme court of the United States in Smoot's Case (15 Wall., 48).
This action having been based upon the breach of the contract, the burden was upon the plaintiff to prove such breach and the damages sustained by reason thereof.
The statement of inability or refusal to perform was not alleged in this action as a mere waiver of a performance of a condition precedent upon the part of the plaintiff so as to dispense with such performance or a tender of performance as in most of the cases cited, for example, the case of Lawrence v. Miller (86 N. Y., 138), and there must be alleged and proved here such an act of the defendant as amounts to an entire abrogation of the contract, so that by the act of the defendant the contract is at an end, and this must be treated and acted upon as such by the party to whom the promise was made.
In Wakeman v. Wheeler and Wilson Company (101 N. Y., 210), the court held that in an action for a breach of the contract, the recovery is based upon the repudiation of the contract. Plaintiff is deprived of his contract and is entitled to recover in lieu thereof its value. That is the foundation of the plaintiff’s claim in this case and to entitle him to recover such value, he must prove that his contract was destroyed; that by some act of the defendant he was deprived thereof, and in Fish v. Folley (6 Hill, 54), it was held that on a total breach of the contract, the contract was put an end to and that gave plaintiff a right to-sue for an equivalent in damages.
*285 To sustain this burden, plaintiff has proved in three letters from the deféndant assuming that the letter of March 11, 1882, was a notice, that the defendant would not perform the services referred to in the contract for the compensation therein provided; the plaintiff then had his election either to accept that letter as a refusal to perform, treat the contract as at an end, and bring his action for a breach thereof or he could proceed under the contract, hold the defendant to a compliance with its terms either to treat the contract as broken, and at end, or treat it as in full force and effect.
As an illustration of the cases in which such an election exists, see Noyes v. Phillips (60 N. Y., 411), Higgins v. Delaware Railroad Company (60 N. Y., 557), and the remarks of Nelson, C. J., in Masterton v. The Mayor, etc. (7 Hill, 71).
It is evident that these positions are inconsistent. In one case the contract was abrogated by the breach, and in the other case the defendant would be liable for the amount received and collected by the defendant from the person to whom the despatches were sent, less the compensation allowed by the contract to be retained by the defendant for the services performed.
Standing in this position the plaintiff continued to deliver dispatches to the defendant, which were received and transmitted; served a notice on defendant that his contract was still in force and that he was carrying it out, which notice was received by defendant without objection and, after the receipt of such notice, his dispatches were received by the defendant and transmitted,* and plaintiff then brought an action for the amount due under the contract, to the 22d of June, 1882, and recovered judgment therefor.
I think it is clear that this was an election to proceed under the contract, and hold the defendant to a compliance with its terms and not to treat the contract as broken and at an end.
In Rodermund v. Clark (46 N. Y., 357), it is held that “where there exists an election between inconsistent remedies, the party is confined to the remedy which he first prefers and adopts; any decisive act of the party, with knowledge of his rights and of the facts, determines his election in the case of conflicting and inconsistent remedies.”
In Sanger v. Wood (3 Johns. Ch., 421), the chancellor says: “In a case where the remedies sought are absolutely repugnant to each other the plaintiffs ought to have made their election at once, after they came to the knowledge of the facts. * * * Any decisive act of the party, with full knowledge of his rights and of the facts, determines *286 his election in the case of conflicting and inconsistent remedies.”
I consider the going to trial in the action at law, and especially the entry of judgment afterwards upon the verdict as a decided confirmation of the settlement. See also Morris v. Rexford (18 N. Y., 557).
Applying this rule, it is evident that the act of the plaint-' iff, in insisting upon the performance of the contract after the letters of March eleventh and March twenty-fourth, and down to June twentieth, and the entry of the judgment in the action upon the contract for the amount due to June 22, 1882, was an election to hold to the contract; that the plaintiff, having elected to affirm the contract as it was, is bound by that election.
See Washburn v. Great Western Ins. Co. (114 Mass., 175), cited and approved in Steinbach v. The Relief Ins. Co. (77 N. Y., 494); Moller v. Tuska (87 id., 166); Strong v. Strong (102 id., 73), and cannot now claim that the letter was such a breach of the contract as would entitle him to recover.
I am also of the opinion that the finding of the referee, on the first cause of action affirmed by the court and standing unreversed, was conclusive as an adjudication that the contract was in force to the 22d June, 1882, and there was, therefore, no breach of the contract prior to that time.
As before stated, the judgment between the same parties in favor of the plaintiff, on the first cause of action entered on the referee’s report, is an adjudication that the contract was duly executed between the plaintiff and the Atlantic and Pacific Telegraph Company, that the plaintiff was entitled to enforce the same, and that the defendants were hable under the provisions of the contract, but it is also an adjudication that the contract was in force between the Barties up to the 22d of June, 1882, for the referee finds, mt collections were made by the defendants for said plaintiff, under the said contract, up to June 22d, 1882, and that the telegraphic service rendered by the defendant to plaintiff, from the 3d day of February, 1881, to the 22d day of June, 1882, under the terms and conditions of the contract, amounted to the sum named, and for the balance due under the terms of the contract the plaintiff was given judgment.
The case of Davis v. Tallcot (12 N. Y., 187), was an action to recover for breach of contract on the part of the defendant, which breach was denied, and on the trial the defendant proved that in a former action between the same parties, in which the defendant in this action was plaintiff, he had recovered judgment upon the contract, and the court held *287 that the former was a bar to the action; that the plaintiff in the former action must have established his title to the prices stipulated by proof that the agreement was carried out; that the defendants in that former action were at liberty to meet and combat those proofs by counter-evidence on their part, and that the report of the referee in that former action, followed by the judgment of the court, estopped the parties to that suit from ever after questioning that fact in any controversy arising upon the same agreement.
In Bogardus v. N. Y. Life Ins. Co. (101 N. Y., 334), the court say: “It is essential to the legal status of a cause of action on contract that it should show an existing contract and a performance by the plaintiff. These facts must be alleged and, if denied, proved on the trial.
Applying this principle to the case at bar, to entitle the plaintiff to recover on the first cause of action, it was necessary for Mm to prove that the contract was executed and was in force to the twenty-second of June, and the report of the referee, followed by the judgment of the court allowing a recovery'on the contract to the twenty-second of June, was an adjudication that the contract was in force to that time.
In Krekeler v. Ritter (62 N. Y., 374), it was held that a former judgment is competent to disprove a material allegation of tfie complaint traversed by the answer, and as evidence, it is conclusive as an adjudication of the same facts in the action between the same parties, that the' same facts could not be tried between the same parties.
It being thus established that there was no breach of the contract by the defendant to the 22d of June, 1882, and as the evidence fails to disclose that the defendant committed any breach of the contract after June twenty-second, or after that date did any act which could be construed into a refusal to perform the contract, but on the contrary shows that on June twenty-two the plaintiff voluntarily ceased business under the contract, because he had no money to carry on the business, I am of the opinion that the plaintiff failed to establish a breach of the contract by the defendant, and without considering the other serious questions presented by the appeal, I think the judgment should be reversed and a new trial ordered, with costs to abide the event.
Sedgwick, C. J.
I am of the opinion that the damages were excessive, and on that ground agree with Judge Ingraham in the result stated by him.
Freedman, J.
I agree with Judge Ingraham that upon the case as it came before us, the plaintiff failed to establish *288 a total breach of contract by the defendant before he (the plaintiff) voluntarily ceased business under the contract. I, therefore, agree to reverse and to order a new trial.